IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Debbie Hughey, ) | |
| ) | Civil Action No. 6:07-297-HFF-BHH |
| Plaintiff, ) | |
| ) | |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION OF** |
| ) | **MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Greenville Health System University ) | |
| Medical Center, formerly known as ) | |
| Greenville Health System, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. 141.] The plaintiff has pled claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1981.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

The plaintiff is a Registered Nurse with a nursing degree from Methodist Hospital School of Nursing in Philadelphia, Pennsylvania. (Pl. Dep. at 7.) The plaintiff applied for a job with the defendant on July 17, 1998 (Pl. Dep., Ex. 3.) and was offered the job on August 19, 1998. (Pl. Dep. at 53, Ex. 4.)

Her initial assignment was to the vascular unit on 2D, and she was supervised by Millie Holden. (Pl. Dep. at 54.) The plaintiff later requested, and was granted, a transfer from Unit 2D to the Supplemental Staffing Team (Pl. Dep. at 55, 94, 159), where she was

supervised by Carol Moody. (Pl. Dep. at 56.) This transfer was effective March 29, 1999. (Pl. Dep. at 163, Ex. 16.) Later, the plaintiff requested, and was granted, a transfer to Unit 5D in December, 2001. (Pl. Dep. at 147-148; Ex. 8.) The plaintiff stayed in Unit 5D until she resigned in August, 2006. (Pl. Dep. at 94-95.) The plaintiff's last requested transfer was in 2005, when she requested, and was granted, a transfer from full-time to part-time status. (Pl. Dep. at 243-244, Ex. 28.)

The defendant admits that throughout her employment, the plaintiff was consistently rated as "meeting" or "exceeding" standards in her annual performance appraisals. The plaintiff did, however, receive a number of written warnings during her tenure with the defendant. These included five (5) write-ups for violations of the defendant's attendance policies. (Pl. Dep., Exs. 19, 21, 22, 23, 24, 26.)

The Court will not recount them here, as most are time barred, but the plaintiff has alleged numerous acts of discrimination in the defendant's refusal to promote her and in its discipline of her, some of which will be discussed in greater detail below. The plaintiff contends that she has suffered such discrimination in every position she has held. The plaintiff generally asserts an "atmosphere . . . discriminatory, hateful, vengeful, harassing and retaliatory. No justice." (Pl. Dep. at 246.)

On or about March 30, 2006, while still employed with the defendant, the plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Pl. Dep., Ex. 1.) The plaintiff resigned from her employment as a Registered Nurse on August 28, 2006. The EEOC investigated the plaintiff's claims of discrimination and retaliation and issued a Right to Sue notice on or about September 11, 2006. (Pl. Dep., Ex. 2.) The plaintiff was informed, both in the Right to Sue Notice and a letter from the EEOC Investigator dated August 28, 2006, that she must file suit within 90 days of receipt of the Right to Sue Notice. (Pl. Dep., Exh. No. 2.) The plaintiff acknowledges that

she received the Right to Sue Notice on October 30, 2006. (Pl. Dep. 45-46; Ex. 2.) The plaintiff's Complaint was not filed until 92 days later on January 30, 2007.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this

3

standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

### I.     Title VII Claim

The defendant contends that the plaintiff's Title VII claim should be dismissed for the plaintiff's failure to file this lawsuit within 90 days of receipt of a right-to-sue letter from the EEOC.

It is well-established that prior to bringing a lawsuit under Title VII, a plaintiff must have filed a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e); *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139 (4th Cir. 2007); *Smith v. First Union Nat'l*

*Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The plaintiff filed a Notice of Charge of Discrimination with the EEOC, dated April 3, 2006. (Def. Mem. Summ. J., Ex. 1.)

The defendant, however, contends that the plaintiff failed to file her lawsuit within 90 days of having received the Right to Sue Notice from the EEOC. Section 2000e-5(f)(1) of the United States Code provides that a person who receives a right-to-sue notice from the EEOC must file any civil action against the respondent named in the charge in either state or federal court within 90 days of receipt of such notice. 42 U.S.C. § 2000e-5(f)(1). Critically, the Fourth Circuit strictly adheres to the 90-day rule. *See Watts-Means v. Prince George's Family Crisis Center*, 7 F.3d 40 (4th Cir. 1993) (a lawsuit commenced **95 days** after plaintiff received her right-to-sue letter from the EEOC was barred by the 90-day rule); *Harvey v. City of New Bern Police Dept.*, 813 F.2d 652 (4th Cir. 1987) (barring Title VII claim where lawsuit was commenced **91 days** after he received a right-to-sue letter from the EEOC); *Dixon v. Digital Equipment Corp.*, 1992 WL 245867 (4th Cir. September 30, 1992) (affirming the district court's grant of summary judgment to the defendant because *pro se* plaintiff filed on the **91st day** after receiving the right-to-sue letter).

In the instant case, the EEOC issued its Right to Sue Notice on September 11, 2006 (Pl. Dep., Ex. 2). As always, in the body of that Notice, the plaintiff was informed that she had to file her lawsuit "WITHIN 90 DAYS." *Id*. The plaintiff has expressly indicated that, although the Notice was postmarked September 11, she did not actually receive it until October 30, 2006. (Pl. Dep. at 45-46; Compl ¶ 7.) The plaintiff did not file her present case until January 30, 2007, 92 days after she received the Notice on September 11. [Doc. 1.] As stated, the 90-day period is calculated from the receipt of the notice. *See Harvey*, 813 F.2d at 653-54. So accepting, as true, the plaintiff's actual date of alleged receipt, the Title VII claims are untimely by 2 days.

The Court, however, does not believe that the plaintiff is entitled even to the October 30 receipt date. The Fourth Circuit has rejected an "actual receipt" approach in favor of a

5

flexible "case-by-case" examination. *Id*. at 654. This approach serves to eliminate the plaintiff's ability to manipulate the date of receipt, through avoidance or otherwise. *See id.* Under the circumstances, it seems unlikely, therefore, that the Court should accept October 30, a date nearly two months after the postmark date of the Notice, as the date of receipt.

The Court has not been given any reason to accept October 30 as the date of receipt. Her personal representation is not enough. She has not made any showing as to why it might have taken some 49 days for her to have received the Notice. She acknowledges that it was dated and postmarked September 11 but then contends that there was a "yellow post office forwarding sticker," on the envelope containing the Notice, dated October 24, 2006. (Pl. Resp. Summ. J. at 3.) The Court assumes that the plaintiff means to imply that the delay was inherent in the activity of the mail service and no fault of her own. The plaintiff, however, has not produced that sticker or any other supporting evidence. It is just as likely that the delivery of the Notice by the mail service was delayed through some oversight of the plaintiff. The lack of evidence leaves the true circumstances in substantial doubt.

Because the Fourth Circuit does not adhere to an "actual receipt" rule, *see Harvey*, 813 F.2d at 653-54, when the date of receipt is in dispute, a 3-day presumption, from the date of mailing, is substituted for purposes of calculating the time of receipt. *See Dixon*, 1992 WL 245867, at *1; *Griffin v. Prince William Hosp. Corp.*, 716 F. Supp. 919, 921 n.7 (E.D. Va. 1989). Instead of accepting the actual receipt date, the plaintiff is simply afforded the 3-day grace period. This additional 3 day period, however, normally allowable under Rule 6 of the Federal Rules of Civil Procedure for service, is not typically extended to Title VII claimants because the Statute provides for a 90-day period from the time of *receipt*. *See Dixon*, 1992 WL 245867, at *1. But, where a controversy exists over the date of receipt, as here, 3 days are accorded in lieu of the alleged date of actual receipt. *Id*.

The Court, therefore, believes that the date of receipt is more rightly characterized as September 14, rather than October 30. In that case, the Complaint would be nearly a month and a half out of time. Although, the difference is really of no moment. Whether 45 days or 2, the plaintiff's Complaint is untimely.

The time for filing her suit, however, may be equitably tolled under certain circumstances. *See Harvey*, 813 F.2d at 654. But the plaintiff has offered no such bases. She has generally complained of "extraordinary circumstances and estoppel tactics" of the EEOC and its failure to fully investigate her charge of discrimination. (See Pl. Resp. at 1-3.) Even to the extent such allegations are true, they would have occurred, if at all, prior to issuance of the Notice and cannot pose as an explanation for any delay that might have occurred between the time of mailing of the Notice and her actual receipt of it. Nor do such allegations against the EEOC, if true, somehow explain the 92-day delay in filing this case even from the date she claims to have received the Notice. She does not contend that actions of the EEOC prevented her, after October 30, from filing her Complaint by January 28.

The plaintiff lastly contends that the 90-day period should be tolled because the court was closed on Sunday, January 28, 2007, and that the clerk of court closed early on Monday, January 29, 2007. (Pl. Resp. at 10.) Of course, these excuses, to the extent true, do not explain why the plaintiff failed to file her case on the Friday before, January 26, or the Thursday before that, or the week before that, or the month before that. She was free to file her Complaint at any time prior to the expiration of the 90-day period. She has simply offered no reason why filing could not have been earlier accomplished for any reason outside of her control.

The Court, therefore, would decline to find any equitable basis to toll the 90-day period. Her Title VII claim is untimely and should be dismissed.

7

## II. Section 1981 Claim

As an initial matter, the plaintiff has adamantly claimed that she has only filed a claim pursuant to Title VII and "**NOT THE CIVIL RIGHT [sic] ACT OF 1866!!!**" (Pl. Resp. at 2.) The plaintiff expressly refers the Court to her Complaint, in support. The Complaint, however, repeatedly cites 42 U.S.C. § 1981 as a basis for her various causes of action. (Compl. at 3, 6-8.) As the defendant notes, Section 1981 of the United States Code was originally enacted as the first section of the Civil Rights Act of 1866. *See* 42 U.S.C. § 1981. The Court will assume that the plaintiff has not meant to abandon her Section 1981 claim and is simply confused by the nomenclature employed by the defendant.

Section 1981 provides, in pertinent part, that:

> All persons . . . shall have the same right . . . to make and enforce contracts . . .

42 U.S.C. § 1981(a). In 1991, Congress further defined the term "make and enforce contracts" to include:

> the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

42 U.S.C. § 1981(b).

### A. Statute of Limitations

The statute of limitations period under Section 1981, applicable to post-contract formation conduct,[1] is the four-year period prescribed by 28 U.S.C. §1658. *See Edith*

---

[1] The applicability of Section 1981 was limited by the United States Supreme Court to only conduct related to the formation of the employment contract and not to any conduct by the employer after the contract relation had been established. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 177 (1989). The 1991 congressional amendments permit employees to now sue under Section 1981 for post contract-formation conduct. 42 U.S.C. § 1981(b). *See James v. Circuit City Stores*, Inc., 370 F.3d 417, 421 (4th Cir.2004) ("Claims ... alleging discrimination after the formation of the employment relationship (post-formation conduct claims), were not actionable under § 1981 after the Patterson decision ... [A]fter the enactment of the [Civil Rights Act of 1991], claims based on conduct occurring after the formation of the contractual relationship (post-formation conduct) are actionable under § 1981.")

*Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, (2004) *Hunter v. American Life and Accident Insurance Company*, 375 F. Supp. 2d 442, 448 (D.S.C. 2005).

The Court agrees with the defendant that, because the plaintiff did not file her *pro se* Complaint until January 30, 2007, only those claims which arose on or after January 30, 2003, are timely and will be considered. *See White v. BFI Waste Services*, LLC, 375 F.3d 288, 292 (4th Cir. 2004). This ruling eliminates the need for any consideration of the plaintiff's treatment by the defendant while assigned to Unit 2D (August 19, 1998-March 29, 1999) (see Pl. Dep. 53-54, Ex. 16) or Supplemental Staffing (March 29, 1999 - December 30, 2001) (see Pl. Dep, Exs. 8, 16). (See generally Def. Mem. Supp. Summ. J. at 4-9.) The statute of limitations would also bar consideration of any allegations related to the plaintiff's time on Unit 5D from December 30, 2001 through January 30, 2003. (See Pl. Dep., Ex. 8.) The plaintiff's allegations on pages 3-6 of her memorandum in opposition to summary judgment all relate to incidents within these time periods and, therefore, while thoroughly considered, will not be specifically treated herein and should be dismissed.

**B.     Substantive Merits**

As an initial matter, the Court would emphasize that it appreciates the difficulty a *pro se* individual, like the plaintiff, has in prosecuting a complex discrimination case. And, to that end, the Court has done everything in its power to liberally construe submissions of the plaintiff to her every benefit. Notwithstanding, the plaintiff's response to summary judgment is fatally inadequate. She has submitted not a single document of evidence or testimony in support of her substantive claims. Her response, were the Court even to take it as a verified affidavit, is almost wholly characterized by unsubstantiated accusation, conjecture, and hearsay, none of which would be admissible at trial. She has not in any respect met her burden under Rule 56 of the Federal Rules of Civil Procedure to create issues of fact concerning her Section 1981 claim.

As the Fourth Circuit has explained, the plaintiff may avert the defendant's summary judgment motion "through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

These methods of proof, including the burden-shifting framework under *McDonnell Douglas,* apply equally to Section 1981 claims as to Title VII claims. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 263 n.* (4th Cir. 2008); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir.2004). While she does not specify which proof method she would employ, the nature of her allegations are, to her benefit, best considered in the context of the

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting proof scheme.[2] Regardless of the proof methodology used, though, the Court could not recommend that the plaintiff could survive summary judgment. The Court will principally consider the plaintiff's allegations in light of *McDonnell Douglas*.

### 1. *Prima Facie* Case

The Court interprets the plaintiff to have pled claims for a discriminatory failure to promote and for discriminatory discipline. (Compl. ¶ 3-6.) The *prima facie* cases for each are as follows.

To establish a prima facie case of a discriminatory failure to promote, the plaintiff must show that (1) she is a member of a protected group; (2) she applied for the position in question, (3) she was qualified for the position; and (4) the defendant rejected the requested promotion under circumstances giving rise to an inference of unlawful discrimination. *See Moore v. Mukasey*, 305 Fed. Appx. 111, 115 (4th Cir. 2008); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir.2005).

In order to establish a *prima facie* case of discrimination in the enforcement of employee disciplinary measures, the plaintiff must show that (1) she is a member of a protected group; (2) she was qualified for her job and her performance was satisfactory; (3) she was disciplined; and (4) other employees who were not members of the protected group were not disciplined under apparently similar circumstances. *See Washington v. City of Charlotte*, 219 Fed. Appx. 273, 279 (4th Cir. 2007); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir.2002).

The plaintiff has not created issues of fact as to the *prima facie* case for either claim.

---

[2] The plaintiff nowhere contends that she has direct evidence of a discriminatory failure to promote or discipline. In fact, as will be discussed, she admits that such evidence is lacking.

### a.     Failure to promote claim

For each of her allegations relating to promotion, the plaintiff has failed to create issues of fact as to element four of her *prima facie* case. In many instances, if not all, she has also failed to establish elements two and three.

The following are verbatim allegations of the plaintiff regarding the defendant's alleged failure to promote, arising sometime during her assignment to Unit 5D. The Court will respond to each in turn.

- **"Even though, Plaintiff received merit increased [sic], it was disclosed that new nurses (white) were getting paid more monies than nurses that had experience."** (Pl. Mem. Opp. Summ. J. at 7.)

In support of this statement, the plaintiff has not identified by name a single white nurse who has been paid more than her but who has less experience. She has identified no individuals whatsoever. She has not attempted to establish the level of her pay at any given time and has not attempted to establish the pay of any other similarly situated individual. Nor has the plaintiff attempted to submit any evidence regarding her experience relative to those unnamed individuals. Her brief is marked by such ambiguities which leave the Court with no choice but to find them too thin a reed upon which to stand. Her statements, in the absence of evidence, create no issues of fact as to the fourth element of her prima facie case that circumstances existed giving rise to an inference of unlawful discrimination. *See Moore*, 305 Fed. Appx. at 115.

- **"As previously stated that Plaintiff has applied for several positions that [sic] she was denied of them all. It was like PLAINTIFF WAS BEING HELD HOSTAGE ON 5D UNIT. . . . Defendant even denied a lateral move to another Medical-Surgical Unit, even units at their other facilities Simpsonville, SC."** (Pl. Mem. Opp. Summ. J. at 7-8.)

No reasonable jury could find for the plaintiff on this allegation. There is literally no evidence (1) that she applied for the positions or (2) that such applications were denied or (3) that she was qualified for the positions or (4) that such denials, if any, were on account of her race. The plaintiff may not proclaim it and, thereby, make it so. *See* Fed. R. Civ. P.

12

56. In regards to this allegation, the plaintiff does identify a Marilyn K, apparently a white nurse, who was "granted a move off of 5D to other units; while, plaintiff's several requests were ALL DENIED." (Pl. Mem. Opp. Summ. J. at 8.) But, here, the plaintiff's central problem persists. She has no proof. There is no documentation of any employee named Marilyn K.; no documentation that such individual requested and was moved off of Unit 5D; no documentation that the plaintiff requested a comparable transfer; no evidence of Marilyn and the plaintiff's relative qualifications, responsibilities, or circumstances. The plaintiff has only bald allegation and, while the Court appreciates the overwhelming task this process poses to a *pro se* plaintiff, it is her obligation nonetheless. It would be a disservice to the defendant and to the pursuit of real justice for the Court to allow a case to proceed on the vague and unsupported allegations of every plaintiff who simply felt deeply that they had been injured. The rules of civil procedure require more. *See* Fed. R. Civ. P. 56.

- **"A pattern of racism, retaliation, harassment, threaten and violent work environment was created and maintained by defendants. On some of the positions that plaintiff have applied for was denied and was given to some white workers. Some of the jobs listing were even taken off the availability list, once Plaintiff had applied for it. Some job descriptions were changed so that to make it appeared that plaintiff would not be able to qualify for them. Defendant even refusal [sic] to accept plaintiff's requests for career advancements. Thereby denying plaintiff of the ability to be promoted off of 5D Nursing Unit, and etc. . ."**

These allegations epitomize the deficiency in the plaintiff's briefing. The first sentence is conclusory. And the subsequent sentences do not confirm it. Even if they were all true, exactly as the plaintiff alleged them, they would not qualify as "circumstances giving rise to an inference of unlawful discrimination." *Bryant*, 288 F.3d at 133. First, just because white nurses received positions for which the plaintiff applied does not mean that such decisions were made on account of race. Ultimately, the plaintiff must demonstrate that her qualifications were "demonstrably superior" than those of the white nurses who were given the positions, in order to establish that the defendant acted with pretext in denying her the promotions. *See Heiko v. Columbo Savings Bank, F.S.B.*, 434 F.3d 249,

261-62 (4th Cir. 2006). But the plaintiff has not created issues of fact as to any of the relevant considerations. She has not established (1) the positions for which she applied during the relevant period; (2) the posted qualifications for such positions; (3) how she satisfied those qualifications; or (4) how other white nurses who were given the positions were less or comparably qualified to her. Accordingly, she cannot satisfy either the third or fourth prongs of her *prima facie* case.

Second, the fact that job descriptions were changed or job postings deleted, without more, says nothing about any discriminatory intent. The plaintiff has not come forward with any evidence that such events occurred nor has she explained or demonstrated how any such changes affected her disproportionately to others similarly situated but of a different race.

The *McDonnell Douglas* proof scheme, by design, recognizes, and attempts to expose, the sometimes subtle and nuanced nature of invidious discrimination – discrimination which is oftentimes not blatant or obvious. The burden-shifting framework permits jurors to draw reasonable inferences, concerning the presence of discrimination, from contextually suspect conduct of employers. But, the plaintiff may not survive summary judgment on conjecture and innuendo alone. Allegations of simple mistreatment or rudeness do not qualify as actionable conduct. Title VII is not "a general civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). The fact that the plaintiff may have been made to feel "beneath them" or "talked down to" or "belittled," even if true, is not probative evidence of discrimination, without more. (Pl. Dep. at 59-60.) The plaintiff has simply failed to create issues of fact as to the second, third, or fourth elements of her promotions claim. The Court cannot allow a jury to find discrimination based on generic and unsubstantiated claims, about unspecified positions, applied for at unspecified times, and given to unidentified white nurses over the plaintiff. The Court has no doubt that

14

the plaintiff has felt mistreated, and she may very well have been. But, she has not produced evidence that it was on account of her race. And, juries may not guess about it.

### b. Discipline claim

The plaintiff also complains concerning discipline she received, which she believes was racially motivated. From January 30, 2003, to her resignation on August 28, 2006, the plaintiff received six (6) written warnings, five (5) of which related to violations of the defendant's time and attendance rules and one (1) which involved the plaintiff's failure to complete required computer-based training. (Pl. Dep., Exs. 21, 22, 23, 24, 26.)

The plaintiff's showing regarding discipline suffers from the same deficiencies as her promotions claim. She has summarily alleged the following:

- the attendance policy was never "clearly" explained
- the defendant violated its own policies by not accepting a doctor's note regarding the plaintiff's absences
- the defendant's computers were "always malfunctioning"
- other individuals participated in similar conduct, 90% of which were white and "most of them were management close friends," but were not disciplined

(Pl. Resp. Summ. J. at 7.)

In regards to the last allegation above, the plaintiff even claims to have identified one such individual "Vickie" (Pl. Resp. at 7) and a white female with long, auburn hair. (Pl. Dep. 186, 210.) The problem, however, is that the Court, and ultimately the jury, cannot simply take the plaintiff's word for it. The plaintiff must have some evidence that another individual engaged in similar conduct, was white, and was treated differently for it. All of these elements are missing from the plaintiff's submission. She has offered no evidence whatsoever. Any representations she might make about what she heard about the treatment of a largely unidentified employee, would be impermissible hearsay. There are no facts as to what she believes "Vickie" did, when she did it, what Vickie's position was,

15

or whether she was otherwise subject to the same policies and job requirements. The Court cannot submit such allegations to a jury for consideration.

Even if the plaintiff could establish a *prima facie* case, she has not created any issue of fact as to whether the reprimands were not, in fact, given for a legitimate, non-discriminatory reason. *See McDonnell Douglas*, 411 U.S. at 802-05. She has confessed to not knowing whether she was absent on the relevant days. (Pl. Dep. 178-179, 200, 210, 229.) The undisputed evidence of the defendant is that she was. (Pl. Dep. Exs. 21, 22, 23, 24, 26.) She has not rebut the defendant's legitimate, non-discriminatory reason for the discipline.

The plaintiff is generally right that the use of the "n" word or other epithets are not necessary to prove her case. She has readily admitted that such open indicia of discrimination are not present. (Pl. Dep. at 60, 81-82.) And, as she would contend, it is the actions of the racist among us that are, in many instances, more damaging than hateful words and which Section 1981 and Title VII, ultimately, mean to remedy. But at the same time, the plaintiff may not convert even abusive or unfortunate conduct of the defendant into discrimination, simply because she is black and some in management are white or because she has discerned some latent animus. And such is what she would have the Court accept:

> Q: Well, how can you – that's my question. How do you know that this one was because of your race?
>
> A: Because of how he talked to me, as I said. I mean, like for example, there's been a doctor who was – who was angry and talked hostile. He's a renal doctor. But he was – and he was white. I didn't feel as though the way he talked to me was because I was racial. He cared about that patient that much, he expressed his anger. Okay? I didn't feel as though he was racial towards me. So, no. It's certain way certain racial people talk to black people and they let you know, and that's why I felt as though he was racial.
>
> Q: I'm asking you specifically how did he let you know that this was racial?

> A: And specifically, as I said over and over again, the way the nasty tone and demeanor in which he talked to me.
>
> Q: Was it the words he used?
>
> A: He didn't use the word nigger. But as I said –
>
> Q: I'm not suggesting that he did. Was there any particular word that he used that was offensive to you?
>
> A: Not that I can recall.

(Pl. Dep. 81-82.)

This may very well be an accurate intuition of the plaintiff's but it is not legally cognizable evidence of discrimination. The plaintiff has had substantial opportunity to build her evidence in this case but has elected not to do so. Her submission does not create the necessary issues of fact as to the elements of her claims. Nor is there any evidence that she was forced to resign for any discriminatory reasons. Any other claims the plaintiff intended by her Complaint or memorandum in opposition to summary judgment are equally unsupported.

The plaintiff has also made various statements about poor air quality at the hospital none of which have anything to do with a racial discrimination claim pursuant to Section 1981.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, it is RECOMMENDED the defendant's summary judgment motion should be GRANTED [Doc. 141] and the plaintiff's case dismissed *with prejudice*.

> s/Bruce H. Hendricks
> United States Magistrate Judge

June 16, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).